# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOHAMMED Z. HUSSAINI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 8887 |
| ) | |
| G4S SECURE SOLUTIONS (USA) INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Mohammed Hussaini, a Muslim man born in India, sued his former employer, G4S Secure Solutions (USA) Inc., alleging that G4S discriminated against him because of his religion, race, and national origin. G4S has moved for summary judgment. For the reasons set forth below, the Court grants summary judgment for G4S on Hussaini's retaliation claim but denies the motion for summary judgment on his other claims.

## Background

G4S is a company that contracts with other businesses to provide security services. In 2000, G4S hired Hussaini to work as a security guard at a warehouse in Carol Stream, Illinois. He was eventually promoted to the position of shift supervisor. As a supervisor, he worked the morning shift, which generally lasted from 5:30 a.m. to 2 p.m. Monday through Friday.

Hussaini, a practicing Muslim, attends Jummah prayers at a mosque in Bolingbrook, Illinois every Friday afternoon. Beginning in 2010, Hussaini would leave

work early at about 10:30 a.m. so that he could go home, change his clothes, shower, and arrive at the mosque in the early afternoon when prayers began. He testified that changing his clothes and showering were part of his religious practice before Jummah prayers. He also testified that he had his supervisor's permission to leave early and that he never received complaints about or objections to the modified schedule.

In October 2015, Hussaini's supervisor was fired and replaced by Richard Griggs. In November, Hussaini wrote Griggs a letter in which he asked to leave at 10:30 a.m. on Fridays in order to attend prayers. The letter referred to previous conversations between Hussaini and Griggs about early departures on Fridays. Although at least one of Hussaini's work schedules indicates that he was required to be at work from 5:30 a.m. to 2 p.m. on Fridays, both Griggs and Hussaini testified that every time Hussaini asked to leave early to attend prayer, Griggs allowed him to go. It is undisputed that Hussaini never missed Jummah prayers because of work.

Griggs conducted a performance review of Hussaini in December 2015. Griggs summarized his conclusions in a memo to his supervisor, Sadik Patel. In the memo, Griggs listed eleven reasons why he believed that Hussaini should be removed from the position as shift supervisor, including a failure to work the required forty hours per week, difficulty managing other employees, and difficulty understanding or implementing G4S's procedures.

Hussaini testified that on December 13, 2015, Griggs told him that he had been fired and instructed him to turn over his badge. He also testified that when he asked why he had been fired, Griggs responded that he needed someone who could work on Fridays.

2

G4S disputes these allegations. In Griggs' version of events, he told Hussaini that he was being demoted as a shift supervisor, not terminated. He also told Hussaini that he could continue working at the warehouse as a security guard but that Hussaini declined the offer. G4S contends that the decision to demote Hussaini was based on the results of his performance review and had no connection to his religious practice, nationality, or race.

After the conversation with Griggs, Hussaini contacted Patel to discuss reassignment. Patel referred Hussaini to G4S's recruiting office, which offered him several security guard positions at nearby locations. Hussaini testified that he declined those offers because he wanted to continue working as a supervisor and did not want to accept the pay and hours that accompanied a lower-level position.

In January 2016, G4S sent Hussaini a letter stating that it was accepting his voluntary resignation for failure to accept another position within the company. Hussaini filed a discrimination charge with the Illinois Department of Human Rights in May 2016, which issued him a notice of right to sue on September 25, 2017. He timely filed this suit alleging that his termination violated Title VII and the Illinois Human Rights Act (IHRA). G4S has moved for summary judgment.

## Discussion

"Summary judgment should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). The Court views the evidence and draws all inferences in favor of Hussaini. *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

3

Hussaini must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes*, 914 F.3d at 564.

**A.     Retaliation claim**

In count 2 of the complaint, Hussaini alleges that he was fired in retaliation for requesting a religious accommodation. Under Illinois law, to prevail on this claim Hussaini must prove that "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019).

G4S argues that this claim is preempted under the IHRA. The IHRA sets out an administrative procedure for certain civil rights claims and specifies that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8-111(D). The Illinois Supreme Court has held that whether this statute preempts a claim turns on whether the claim is "inextricably linked" to right created by the IHRA such that there is "no independent basis for imposing liability apart from the Act itself." *Maksimovic. v. Tsogalis*, 177 Ill. 2d 511, 513, 687 N.E.2d 21, 22 (1997).

The Court concludes that Hussaini's claim is preempted. To satisfy the third element of a claim for retaliatory discharge, Hussaini must point to the specific source of the clearly mandated public policy. *See Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 505,

911 N.E.2d 369, 377 (2009). The only public policy that Hussaini identifies, however, is the IHRA itself. *See* Hussaini's Resp. to Mot. for Summ. J., dkt. no. 38, at 14. If the IHRA is the sole public policy basis for the retaliatory discharge claim, the claim is preempted. *See Nelson v. Realty Consulting Servs., Inc.*, 431 F. App'x 502, 507 (7th Cir. 2011); *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 510-11 (N.D. Ill. 2012) (holding that a religious discrimination claim was preempted by the IHRA because the "the public policy against ethnic and religious discrimination . . . is expressly contained in the IHRA").

Hussaini argues that the Illinois Supreme Court limited the scope of IHRA preemption in *Blount v. Stroud*, 232 Ill. 2d 302, 904 N.E.2d 1 (2009). In *Blount*, the court held that the IHRA did not preempt the plaintiff's claim that she was discharged in retaliation for refusing to commit perjury. *Id.* at 314, 904 N.E.2d at 9. The court emphasized that the plaintiff's claim was based on the Illinois whistleblower statute rather than the IHRA itself, explaining that the "plaintiff here established a basis for imposing liability on defendants independent of the Act, i.e., without reference to the legal duties created by the Act," *id.*, and that the "plaintiff need not and does not rely upon the public policy embodied in this Act to satisfy the elements of her common law tort claim," *id.* at 315, 904 N.E.2d at 10. Unlike the plaintiff in *Blount*, however, Hussaini expressly relies on the public policy embodied in the IHRA to satisfy the third element of his claim. Hussaini's claim is preempted because it is inextricably linked to the rights established under the IHRA.

Because Hussaini's retaliation claim is preempted, G4S is entitled to summary judgment on count 2.

5

B.   **Failure to accommodate**

In count 1, Hussaini alleges that G4S failed to accommodate his religious practices as required by Title VII. To withstand summary judgment on this claim, Hussaini must point to evidence from which a reasonable jury could find that "(1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to [the] employer's attention; and (3) the religious observance or practice was the basis for [the employee's] discharge or other discriminatory treatment." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) (alterations in original) (internal quotation marks omitted). "If the employee shows these elements, the burden then shifts to the employer to show that it could not accommodate the employee's religious belief or practice without causing the employer undue hardship." *Id.*

First, G4S argues that it provided the requested accommodation.[1] Both Hussaini and Griggs testified that every time Hussaini asked Griggs to leave early to attend Friday prayers, Griggs allowed him to do so. It is undisputed that neither Griggs nor any other supervisors ever caused Hussaini to miss prayer. Hussaini's time records also reflect that he never worked past 10:30 a.m. on a Friday during the relevant time period.

Hussaini testified, however, that when Griggs met with him on December 13, 2015, Griggs told him that he was being terminated because he was unavailable to work a full shift on Fridays. At the summary judgment stage, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from

---

[1] There is some dispute about what accommodation Hussaini requested. Griggs testified that at some point Hussaini asked to leave work on Fridays at 6:30 a.m. but did not explain why. Hussaini denies asking to leave at 6:30.

6

the facts." *Rowlands v. UPS – Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018). Viewing the evidence in the light most favorable to Hussaini, a jury that credited his testimony could reasonably infer that G4S withdrew the accommodation it had previously provided.

Second, G4S argues that no reasonable jury could find that Hussaini's religious practices conflicted with his employment, as required to establish his claim for failure to accommodate. G4S points out that the Friday prayers did not begin until the early afternoon—generally between 1:15 or 2:30 p.m.—and that Hussaini therefore did not need to leave work until well after 10:30 a.m. In response, Hussaini argues that he needed to leave by 10:30 in order to have time to travel home, shower, change his clothes, and travel to the mosque.[2] He testified during his deposition that showering and changing clothes are part of his religious observance. Accounting for travel time, a reasonable jury could find that Hussaini's religious practice required him to leave work at 10:30 a.m. on Fridays.

Third, G4S contends that no reasonable jury could find that it demoted or terminated Hussaini because of his religious accommodation. It argues that Hussaini was demoted for poor performance and points to Griggs' memo identifying eleven issues with Hussaini's job performance. This evidence does not entitle G4S to summary judgment, however, because Hussaini testified that Griggs told him that he was being fired because he could not work on Fridays. The Court cannot weigh this

---

[2] G4S objects to the admissibility of the declaration, arguing that it does not comply with 28 U.S.C. § 1746 because Hussaini failed to include a sentence stating that the information is true and correct. The Court need not decide this question because in his deposition Hussaini testified to the relevant information in the declaration.

competing evidence at the summary judgment stage. *Rowlands*, 901 F.3d at 798. In addition, the Court notes that the first alleged deficiency in Hussaini's performance is that he failed "to work a 5 day - 40hr schedule." Griggs Mem., Ex. 4 to Griggs Dep., dkt. no. 34-6, at 38. A jury could reasonably infer that this comment refers to Hussaini's Friday work schedule and therefore conclude that his religious accommodation was a motivating factor in his termination. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015) ("[T]he rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice . . . a factor in employment decisions.").

Fourth, G4S argues that it did not demote or terminate Hussaini because of his accommodation but rather because he refused to accept a different assignment. It points out that after Hussaini met with Griggs on December 13, 2015, Hussaini discussed possible reassignment with other G4S officials. Hussaini testified, however, that he refused to accept those offers because he wanted to continue working as a supervisor instead of returning to a lower-level security guard. A jury could reasonably conclude that limiting Hussaini's reassignment options to low-level positions constituted an adverse employment action because the other positions involved "transfers or changes in job duties that . . . reduce[d] future career prospects." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014). Simply put, G4S's argument fails because "Title VII does not contemplate asking employees to sacrifice their jobs to observe their religious practices." *Adeyeye*, 721 F.3d at 456.

Fifth, G4S argues that Hussaini's requested accommodation constituted an undue hardship. It points to evidence that accommodating Hussaini's schedule would

8

have required G4S to change other employees' schedules and pay overtime wages to cover his absence. As Hussaini notes, however, G4S allowed him to leave work on Fridays at 10:30 a.m. for five full years before he was demoted. In addition, it is undisputed that Griggs allowed Hussaini to leave at 10:30 every time he asked to do so. G4S does not point to any evidence that it incurred an undue hardship during the period when it actually provided Hussaini an accommodation. To the contrary, Steven Patterson, a G4S security guard who worked with Hussaini testified that although his early departures left them "short-handed, it didn't cause any issues" and stated that "we always seemed to manage." Patterson Dep., Hussaini Ex. G., dkt. no. 38-3, at 16:14-22. Based on this evidence, a reasonable jury could conclude that Hussaini's accommodation did not cause G4S an undue hardship.

G4S relies on *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), in which the Supreme Court held that an accommodation is an undue hardship if it requires the employer "to bear more than a de minimis cost." *Id.* at 84. But the Seventh Circuit has clarified that this phrase is best understood as referring to seniority systems or collective bargaining agreements. *See Adeyeye*, 721 F.3d at 456. G4S has not pointed to evidence that Hussaini's accommodation implicated any such issues. The Court therefore concludes that G4S is not entitled to summary judgment on the question of undue hardship.

C.  **Discrimination under the IHRA**

In count 3, Hussaini alleges that G4S discriminated against him on the basis of his religion, race, and national origin in violation of the IHRA. The standards for discrimination claims under the IHRA parallel the standards that apply to analogous

9

federal claims. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016).

A plaintiff can survive summary judgment on a claim for discrimination by pointing to evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Alternatively, a plaintiff may use the burden-shifting framework the Supreme Court adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Ortiz*, 834 F.3d at 766; *Robinson v. Village of Oak Park*, 2013 IL App (1st) 121220 ¶ 29, 990 N.E.2d 251, 259.

G4S argues that no reasonable jury could find that it discriminated against Hussaini on the basis of his religion. The parties' arguments are substantially the same as those regarding the failure-to-accommodate claim. For the reasons described above, the Court concludes that a reasonable jury could find that Hussaini was demoted or terminated because his religious accommodation required him to leave early on Fridays.

In addition, if a jury credited Hussaini's testimony, it could find that the stated basis for his termination—his allegedly poor performance—was pretext for G4S's real motivation. *See Henderson v. Shulkin*, 720 F. App'x 776, 783 (7th Cir. 2017) ("One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision."). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 147 (2000).

G4S argues that there is no evidence that Hussaini's race or national origin in particular motivated its decision to remove him as a supervisor. Although it is true that Hussaini has not pointed to evidence that those factors in particular were relevant, if a jury disbelieved G4S's stated explanation for its decision—namely, that Hussaini was performing poorly—it could reasonably infer under *Reeves* that G4S was attempting to cover up for a discriminatory purpose. *See id.*; *see also Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004) ("Evidence that tends to show that a defendant's explanation for an employment practice is unworthy of credence is probative of intentional discrimination and indeed may be quite persuasive." (citation omitted) (internal quotation marks omitted)). This evidence of pretext precludes granting summary judgment on Hussaini's IHRA discrimination claim.

## Conclusion

For the foregoing reasons, the Court grants the defendant's motion for summary judgment with respect to count 2, the claim for retaliatory discharge under state law, but otherwise denies the motion [dkt. no. 32]. The case is set for a status hearing on May 22, 2019 at 9:30 a.m. to set a trial date and discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 8, 2019